# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF STEPHEN E. CRAWLEY, et al., | Case No.  1:13-cv-02042-LJO-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE PARTIALLY GRANTED |
| v. | |
| KINGS COUNTY, et al., | ECF NO. 18 |
| Defendants. | OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS |

On April 3, 2014, Defendants Kings County, Kings County Sheriff's Department, Dave Robinson, Shawn McRae, and Marius Barsteceanu (all defendants collectively referred to as "Defendants") filed a motion to dismiss.  (ECF No. 18.)  Defendants' motion was referred to the undersigned magistrate judge for findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72.

The hearing on the motion took place on May 21, 2014.  William Schmidt appeared via telephone on behalf of Plaintiffs Estate of Stephen E. Crawley, Norma Crawley and Johnny Crawley (all plaintiffs collectively referred to as "Plaintiffs").  Roy Santos appeared in person on behalf of Defendants.   For the reasons set forth below, the Court recommends that Defendants' motion to dismiss be partially granted.

/ / /

1

# I.

## INTRODUCTION

Plaintiffs filed the original complaint in this matter on December 13, 2013.  (ECF No. 1.)  Plaintiffs filed their First Amended Complaint on March 12, 2014.  (ECF No. 15.)  The First Amended Complaint is the operative pleading in this action.

Plaintiffs' claims arise from an incident which occurred on November 17, 2012 when Stephen E. Crawley ("Stephen") was fatally shot by law enforcement officers.  (First Am. Compl. ¶ 1.)  Plaintiff Norma Crawley ("Norma") is the surviving mother of Stephen E. Crawley. (First Am. Compl. ¶ 4.)  Plaintiff Johnny Crawley ("Johnny") is the surviving brother of Stephen E. Crawley.  (First Am. Compl. ¶ 5.)  Defendant Dave Robinson was the sheriff for Kings County.  (First Am. Compl. ¶ 9.)  Defendant Shawn McRae was a sergeant and Defendant Marius Barsteceanu was a senior deputy for the King's County Sheriff's Department.  (First Am. Compl. ¶¶ 10-11.)

The First Amended Complaint alleges that, on the morning of November 17, 2012, Stephen and Johnny were staying at Norma's residence.  (First Am. Compl. ¶ 17.)  Norma left for the grocery store around 11:00 a.m.  (First Am. Compl. ¶ 18.)  Johnny was watching television in his room and noticed that Stephen "was acting odd" and was "pacing and muttering to himself."  (First Am. Compl. ¶ 18.)  Johnny initially ignored Stephen, but Stephen's behavior became increasingly erratic, with Stephen muttering "you're gonna lose, you're gonna ... I'm gonna come, come after you."  (First Am. Compl. ¶ 19.)  Stephen began hitting the floor with a golf club outside Johnny's bedroom.  (First Am. Compl. ¶ 19.)

Johnny left his residence and rode his bike to a ministry down the road and had someone call 911 to report Stephen's behavior.  (First Am. Compl. ¶ 20.)  Johnny then rode his bike back to the house and waited for officers to arrive.  (First Am. Compl. ¶ 20.)

At around 12:01 p.m., deputy sheriff L. Alvarez was the first officer to arrive on the scene.  (First Am. Compl. ¶ 22.)  Minutes later, deputy sheriffs N. Scott, B. Monteiro, C. Jackson and senior deputy Machado arrived.  (First Am. Compl. ¶ 22.)  Later, Defendants McRae and Barsteceanu arrived with Lemoore Police Officer M. Kendall and a K-9 partner.  (First Am.

Compl. ¶ 22.)

Johnny told Alvarez that Stephen was not under the influence of drugs or alcohol and "was nuts and going crazy and not acting right." (First Am. Compl. ¶ 23.) Johnny also told Alvarez that "he was going to need more officers than just him and that ... Stephen will come at him if he opens the door, so don't open the door." (First Am. Compl. ¶ 23.) Johnny was restrained in the back seat of a police cruiser. (First Am. Compl. ¶ 24.) The officers began to swarm around the house and McRae and Barstecceau issued an order for Stephen to open the front door. (First Am. Compl. ¶ 25.) Stephen did not comply and motioned for the officers to leave. (First Am. Compl. ¶ 25.)

Eventually, McRae, Barsteceanu, Alvarez and Jackson approached the front door with their weapons drawn. (First Am. Compl. ¶ 26.) Alvarez held the security screen door open while Barsteceanu kicked in the front door. (First Am. Compl. ¶ 26.) When Barsteceanu entered, Stephen raised the golf club and moved toward the officers from 25-30 feet away. (First Am. Compl. ¶ 27.) Barsteceanu shot three hollow point rounds into Stephen, which lead to Stephen's death. (First Am. Compl. ¶ 28.) Plaintiffs allege, upon information and belief, that Barsteceanu was not in imminent danger or within striking distance of Stephen when Basteceanu discharged his firearm. (First Am. Compl. ¶ 31.)

Plaintiffs contend that Defendants' actions constitute an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments. Plaintiffs also raise state law causes of action for battery, negligence/wrongful death, negligent infliction of emotional distress and violation of the Bane Act (California Civil Code § 52.1).

## II.

## LEGAL STANDARDS FOR MOTIONS TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-

1  unlawfully harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell

2  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   In assessing the sufficiency of a

3  complaint, all well-pleaded factual allegations must be accepted as true.  Iqbal, 556 U.S. at 678-

4  79.   However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

5  conclusory statements, do not suffice."  Id. at 678.

**III.**

**DISCUSSION**

A.      **Plaintiff Norma Crawley's Standing to Bring Claims on behalf of the Estate
         of Stephen Crawley**

10       Defendants argue that Plaintiffs have not alleged sufficient facts to support the conclusion

11  that Norma has standing to bring suit on behalf of the Estate of Stephen Crawley.  Plaintiffs must

12  allege sufficient facts that demonstrate that Plaintiffs have standing to pursue the claims raised in

13  their complaint.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  "In § 1983

14  actions ... the survivors of an individual killed as a result of an officer's excessive use of force

15  may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law

16  authorizes a survival action."  Moreland v. Las Vegas Metropolitan Police Dept., 159 F.3d 365,

17  369 (9th Cir. 1998).  Under California law, "[e]xcept otherwise provided by statute, a cause of

18  action for or against a person is not lost by reason of the person's death," Cal. Code Civ. Proc. §

19  377.20(a), and "[a] cause of action that survives the death of the person entitled to commence an

20  action or proceeding passes to the decedent's successor in interest ... and an action may be

21  commenced by the decedent's personal representative or, if none, by the decedent's successor in

22  interest."  Cal. Code Civ. Proc. § 377.30.  California law requires any person who seeks to

23  commence an action as a successor pursuant to Section 377.30 to execute and file an affidavit

24  setting forth that person's qualifications as a successor.  Cal. Code Civ. Proc. § 377.32.  At least

25  one decision from this Court suggests that the information required under Section 377.32 must

26  be alleged in the complaint or stated in a separately filed declaration.  See Soliz v. City of

27  Bakersfield, No. 1:12-cv-00841-LJO-JLT, 2012 WL 3645358 at *4 (E.D. Cal. Aug. 21, 2012).

28  ///

1    Defendants do not dispute the fact that California law authorizes a survival action for

2    Section 1983 claims.  Defendants argue that Plaintiffs' First Amended Complaint fails to allege

3    facts that establish that Norma or Johnny are the "personal representative" authorized to

4    commence a survival action pursuant to California Code of Civil Procedure § 377.30.

5    Plaintiffs admit that they erroneously alleged in their First Amended Complaint that

6    Norma had standing to bring claims on behalf of the Estate of Stephen Crawley as the estate's

7    personal representative.  Plaintiffs concede that neither Norma nor Johnny are the legal personal

8    representatives of the estate, but nonetheless Norma has standing to assert a claim on behalf of

9    the estate as a successor in interest.  Accordingly, the defect in the First Amended Complaint

10   appears to be curable by amendment.  The Court will dismiss the claims asserted by the Estate of

11   Stephen Crawley with leave to amend to cure these technical deficiencies.  Any amended

12   complaint should include the information required under Section 377.32 setting forth Norma's

13   qualifications as a successor in interest.

14              **B.    Section 1983 Claim Against Defendant McRae**

15   Defendants argue that Plaintiffs fail to state a cognizable claim under Section 1983

16   against Defendant McRae because there is no allegation that McRae personally participated in

17   Stephen's seizure or that McRae failed to intervene or prevent the incident.

18   Law enforcement officers have a duty to intercede when their fellow officers violate the

19   constitutional rights of a suspect or another citizen.  Cunningham v. Gates, 229 F.3d 1271, 1289

20   (9th Cir. 2000).  "Importantly, however, officers can be held liable for failing to intercede only if

21   they had a reasonable opportunity to intercede."  Id.  An officer cannot be held liable if they "had

22   no 'realistic opportunity' to intercede."  Id.

23   Defendants argue that McRae cannot be liable for failing to intercede because the facts

24   alleged in the complaint show that there was no realistic opportunity to intercede.  Defendants

25   note that the complaint alleges that "immediately after gaining entry," Defendant Barsteceanu

26   shot Stephen, leaving no chance for McRae to intervene to prevent the shooting.

27   Plaintiffs argue that McRae can be subjected to liability because, as a sergeant, he was

28   senior officer at the scene and McRae could have prevented the other officers from attempting to

5

1    gain forcible entry by kicking the door down.  Plaintiffs contend that kicking the door down was

2    unreasonable in light of the officers' awareness that Stephen was unstable.

3         Plaintiffs cite Alexander v. City and County of San Francisco, 29 F.3d 1355, 1366 (9th

4    Cir. 1994) for the proposition that the decision to gain forcible entry on a resident may give rise

5    to liability if that decision was unreasonable and created a dangerous situation.  In Alexander,

6    public health inspectors obtained a forcible entry inspection warrant to investigate a sewage leak.

7    Id. at 1357-58.   When officials attempted to execute the warrant, they heard a man inside

8    threaten "I'm going to get my gun and use it."  Id. at 1358.  The officials called the police and a

9    SWAT team arrived.  Id.  The SWAT team broke into the house and shot and killed the man

10   after the man shot his gun at them.  Id.

11        The court denied the defendants' motion for summary judgment on the ground that a

12   dispute existed regarding whether the defendants' forcible entry into the house was reasonable.

13   Id. at 1366 n.12.  The court held that the reasonableness was disputable because a reasonable

14   jury could determine that it is unreasonable to forcibly enter a house of a mentally ill man who

15   had threatened to use a gun simply to investigate a leaky sewer pipe.  Id. at 1369.  If the forcible

16   entry was unreasonable, the defendants could be held liable for shooting the man because they

17   used excessive force in creating the situation which caused the man to take the actions he did.

18   Id. at 1366.

19        The Ninth Court has since limited Alexander "to hold that where an officer intentionally

20   or recklessly provokes a violent confrontation, if the provocation is an independent Fourth

21   Amendment violation, he may be held liable for his otherwise defensive use of deadly force."

22   Billington v. Smith, 292 F.3d 1177, 1189 (9th Cir. 2002).   The officer's conduct must

23   intentionally or recklessly provoke a violent response: "the fact that an officer negligently gets

24   himself into a dangerous situation will not make it unreasonable for him to use force to defend

25   himself."  Id. at 1190.  In George v. Morris, 736 F.3d 829, 839 n.14 (9th Cir. 2013), the Ninth

26   Circuit rejected a Fourth Amendment excessive force claim based upon law enforcement

27   officers' negligent failure to try less confrontational tactics.

28   ///

6

1       At this stage in litigation, the Court finds that the First Amended Complaint alleges

2  sufficient facts to support the conclusion that the officers' decision to gain forcible entry into the

3  home constituted an intentional or reckless provocation of a violent confrontation which serves

4  as an independent Fourth Amendment violation that led to the use of deadly force against

5  Stephen.  Plaintiffs allege that Johnny informed the officers that Stephen "was nuts and going

6  crazy and not acting right" (First Am. Compl. ¶ 23) and "Stephen will come at him if he opens

7  the door, so don't open the door" (First Am. Compl. ¶ 23).   Accordingly, the officers were

8  allegedly aware that forcible entry would provoke a violent confrontation from a mentally

9  unstable and unpredictable individual.

10      Moreover, Plaintiffs' allegations indicate that there were no exigent circumstances

11  justifying forcible entry into the home.  Further, the allegations support the conclusion that

12  Stephen did not pose an imminent threat to the officers or to other citizens prior to the officers'

13  decision to forcibly enter the home.

14      At the hearing, Defendants argued that Stephen posed a danger to himself and therefore

15  the entry into the home was reasonable because there was probable cause to detain Stephen

16  pursuant to California Welfare and Institutions Code § 5150, which authorizes peace officers to

17  detain a person with a mental health disorder who is a danger to himself or others.  See also

18  Sheehan v. City and County of San Francisco, 743 F.3d 1211, 1216 (9th Cir. 2014) (warrantless

19  search or seizure in person's home may be reasonable under the Fourth Amendment to render

20  emergency assistance).  However, although Defendants contend that their entry was reasonable

21  because Stephen posed a danger to himself; this fact is not alleged definitively in the First

22  Amended Complaint and, therefore, Defendants' argument would be more appropriately

23  resolved on a motion for summary judgment or at trial.  Interpreting the allegations in the light

24  most favorable to Plaintiff, Stephen did not pose a danger to himself or others and therefore there

25  were no exigent circumstances justifying the entry.  Based upon the allegations, the Court finds

26  that Plaintiffs' allegations support a cognizable claim against McRae for excessive force in

27  violation of the Fourth Amendment by intentionally or recklessly provoking a violent

28  confrontation which lead to Stephen's death.

1    **C.      Qualified Immunity with Respect to Defendant Barsteceanu**

2         Defendants argue that Defendant Barsteceanu is entitled to qualified immunity because

3    Barsteceanu's actions did not violate Stephen's Fourth Amendment rights and because the law

4    was not clearly established that Barsteceanu's actions violated Stephen's Fourth Amendment

5    rights.

6         "The doctrine of qualified immunity protects government officials 'from liability for civil

7    damages insofar as their conduct does not violate clearly established statutory or constitutional

8    rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231

9    (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The Court follows a two-step

10   sequence for resolving government officials' qualified immunity claims: First, a court must

11   decide whether the facts that a plaintiff has alleged or shown make out a violation of a

12   constitutional right.  Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Second, the court

13   must decide whether the right at issue was "clearly established" at the time of defendant's

14   alleged misconduct.  Id. (citing Saucier, 533 U.S. at 201).

15        As discussed above, the Court finds that, at this stage in litigation, the facts alleged make

16   out a violation of a constitutional right.  See discussion, supra, Part III.B.  The Court has

17   concluded that Plaintiffs state a cognizable claim against the Defendant officers for intentionally

18   or recklessly provoking a violent response from Stephen which led to the use of force at issue.

19        Additionally, Plaintiffs allege liability on Barsteceanu's part on the additional theory that,

20   as the shooter, Barsteceanu's conduct constitutes excessive force because the circumstances did

21   not warrant the use of deadly force after Barsteceanu gained forcible entry into the home.  When

22   evaluating the reasonability of an officer's use of force, the Court considers factors such as (1)

23   the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety

24   of the officers or others, (3) whether the suspect actively resisted arrest or attempted to escape,

25   (4) the immediacy of the threat, (5) whether force was necessary to safeguard officers or the

26   public, and (6) whether officers administered a warning, assuming it was practicable.  Graham v.

27   Connor, 490 U.S. 386, 396 (1989); Tennessee v. Garner, 471 U.S. 1, 11 (1985); George v.

28   Morris, 736 F.3d 829, 837 (9th Cir. 2013).

1    At this stage in litigation, Plaintiffs' allegations are assumed to be true and the complaint

2  must be construed in the light most favorable to Plaintiffs.  Clegg v. Cult Awareness Network,

3  18 F.3d 752, 754 (9th Cir. 1994).  Plaintiffs admit that, after the officers forcibly entered the

4  home, Stephen raised a golf club and approached Defendant Barsteceanu.  (First Am. Compl. ¶

5  27.)  However, Plaintiffs further allege that Barsteceanu "immediately" shot Stephen (First Am.

6  Compl. ¶ 28) and that Stephen was not within striking distance of Barsteceanu and Barsteceanu

7  was not in imminent danger (First Am. Compl. ¶ 31.)  The Court finds that at this early stage in

8  litigation, the facts alleged are sufficient to establish a Fourth Amendment violation based on the

9  use of excessive force.  Notably, the First Amended Complaint alleges that Stephen was 25-30

10 feet away when he started to "move towards" Barsteceanu and there is no specific allegation that

11 Stephen was moving quickly or in a particularly threatening manner toward the officers.

12 Evidence obtained during discovery may clarify the facts one way or another, but at this stage,

13 the facts alleged must be construed in the light most favorable to Plaintiffs.

14    Defendants also argue that qualified immunity is appropriate because the law was not

15 clearly established that Barsteceanu's actions constituted a violation of Stephen's Fourth

16 Amendment rights.  Again, accepting the allegations as true as the Court must at this stage in

17 litigation, the Court finds that Plaintiffs allege sufficient facts to support the conclusion that the

18 law pertaining to Barsteceanu's use of force was clearly established.  The incident occurred on

19 November 17, 2012.  At that time, it was clearly established that officers who intentionally or

20 recklessly provoke a violent response are liable for the use of excessive force in violation of the

21 Fourth Amendment.  See Alexander, 29 F.3d at 1366; see also Billington, 292 F.3d at 1190-91.

22 Accepting Plaintiffs' allegations as true and construing those allegations in the light most

23 favorable to Plaintiffs, Defendants violated Plaintffs' clearly established right to be free from the

24 use of excessive force caused by Defendants' reckless provocation of a violent response from

25 Stephen.  See discussion, supra, Part III.B.

26    Further, as discussed above, the allegations support the conclusion that Stephen was not

27 an imminent threat to Barsteceanu at the time Barsteceanu shot Stephen.  At the time of the

28 incident, it was clearly established that it is unconstitutional to use lethal force when there was

1  no crime being committed, no immediate threat to the safety to the officers or others, and no

2  attempt to resist arrest or escape.  See Graham, 490 U.S. at 396; Garner, 471 U.S. at 11.

3    Finally, the Court finds that the facts alleged are sufficient to support the conclusion that

4  Defendants' conduct was not reasonable.  The First Amended Complaint charges Defendants

5  with needlessly gaining forcible entry into the home despite knowing that Stephen would be

6  provoked to violence and there being no apparent exigency requiring immediate forcible entry.

7  Similarly, after the officers kicked down the door, Plaintiffs' allege that Stephen was

8  immediately shot despite there being no imminent threat.  While the facts that actually develop

9  during the course of litigation may paint a different picture, the allegations are sufficient at this

10  stage to render qualified immunity inappropriate.

11    Based upon the foregoing, the Court finds that at this stage in litigation, Defendants are

12  not entitled to qualified immunity.

13     **D.**  **Plaintiffs' <u>Monell</u> Claims**

14    Defendants argue that Plaintiffs fail to state a cognizable <u>Monell</u> claim against

15  Defendants County of Kings, Kings County Sheriff's Department and against Defendants

16  Robinson, McRae and Barsteceanu in their official capacities.  Defendants contend that the First

17  Amended Complaint does not include sufficient allegations to support a <u>Monell</u> claim.

18    "A municipality or other local government may be liable [under Section 1983] if the

19  governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be

20  subjected' to such a deprivation."  <u>Connick v. Thompson</u>, 131 S. Ct. 1350, 1359 (2011).  "But,

21  under § 1983, local governments are responsible for 'their *own* illegal acts.'"  <u>Id.</u> (citing <u>Pembaur</u>

22  <u>v. Cincinnati</u>, 475 U.S. 469, 479 (1986)) (italics in original).  "They are not vicariously liable

23  under § 1983 for their employees' actions.  <u>Id.</u>

24    "Plaintiffs who seek to impose liability on local governments under § 1983 must prove

25  that 'action pursuant to official municipal policy' caused their injury."  <u>Connick</u>, 131 S. Ct. at

26  1359 (citing <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 691 (1978)).

27  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its

28  policymaking officials, and practices so persistent and widespread as to practically have the force

1  of law." <u>Id.</u>  Further, "[i]n limited circumstances, a local government's decision not to train

2  certain employees about their legal duty to avoid violating citizens' rights may rise to the level of

3  an official government policy for purposes of § 1983." <u>Id.</u>  However, "[a] municipality's

4  culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to

5  train." <u>Id.</u>  In order to rise to the level of a constitutional violation, "a municipality's failure to

6  train its employees in a relevant respect must amount to 'deliberate indifferent to the rights of

7  persons with whom the [untrained employees] come into contact.'" <u>Id.</u> (quoting <u>Canton v.</u>

8  <u>Harris</u>, 489 U.S. 378, 388 (1989)).

9         Plaintiffs allege that Defendants McRae and Barsteceanu were known to have "dangerous

10 propensities," to abuse their authority, and to mistreat citizens.  (First Am. Compl. ¶ 47-48.)

11 Plaintiffs further allege that McRae and Barsteceanu were not given adequate training to address

12 their behavior or adequately disciplined to correct such behavior.  (First Am. Compl. ¶ 47-48.)

13 Plaintiffs further allege that there exists an unconstitutional policy allowing officers to seize

14 citizens and use excessive force in inappropriate situations that was deliberately indifferent

15 toward individuals' safety.  (First Am. Compl. ¶ 47-48.)  At this stage in litigation, the Court

16 finds that these allegations are sufficient to support a plausible claim against the Kings County

17 Sheriff's Department and the County of Kings on a <u>Monell</u> theory.

18         **E.     Filing of a Timely Tort Claim**

19        Defendants argue that this action should be dismissed because Stephen's estate did not

20 file a timely tort claim against the defendant public entities as required by California

21 Government Code §§ 911.2, et seq.  Defendants contend that, although Plaintiffs may have filed

22 valid administrative claims on behalf of themselves, their claims on behalf of Stephen's estate

23 fail because Plaintiffs were not properly appointed as the "personal representative" of Stephen's

24 estate.

25        As discussed above, Plaintiffs admit that they were not personal representatives of

26 Stephen's estate but nonetheless claim standing to assert claims on behalf of the estate because

27 Norma is Stephen's successor in interest.  <u>See</u> discussion, <u>supra</u>, Part III.A.  Defendants cite no

28 authority, and the Court is unable to find any such authority, which suggests that Plaintiffs'

1  administrative claims are defective because Plaintiffs were misidentified in the First Amended

2  Complaint as "personal representatives" rather than "successors in interest."

3        In fact, the administrative claim form, which is attached as Exhibit 2 to the First

4  Amended Complaint, states:

5              1.    Norma Crawley on behalf of the estate of Stephen E.
                     Crawley
6              2.    Norma Crawley, individually
               3.    Johnny Crawley, on behalf of estate
7              4.    Johnny Crawley, individually

8  (First Am. Compl., Ex. 2.)  Thus, Norma did not specify that she was bringing a claim on behalf

9  of the estate as a "personal representative."  Even if she did, Defendants cite no authority, and

10 the Court is unaware of any such authority, that states that a litigant's mistaken subjective

11 understanding of the basis of her authority to bring claims on behalf of a decedent is of any

12 relevance.  In other words, it appears that Norma had actual authority to bring a claim on behalf

13 of the estate as a successor-in-interest.  The fact that she may have mistakenly believed that her

14 authority to bring a claim was as a "personal representative" is irrelevant.

15       The only defect in the administrative claim appears to be that Johnny purported to assert

16 a claim on behalf of the estate when it does not appear that he had standing to do so.  However,

17 Norma also asserted a claim on behalf of the estate and Defendants do not challenge her standing

18 to do so as a successor in interest.  Therefore, it appears that a proper administrative claim was

19 brought on behalf of the estate.

20       Accordingly, Defendants fail to demonstrate that Plaintiffs did not timely file an

21 administrative claim for claims asserted by the estate.

22       **F.     Plaintiffs' Battery Claim Against Defendant McRae**

23       Defendants argue that the First Amended Complaint does not support a cognizable state

24 law battery claim against Defendant McRae.  Plaintiffs concede this point and consent to

25 dismissal of the battery claim against Defendant McRae.  (Mem. of P. & A. in Opp'n to Def.'s

26 Mot. to Dismiss Pl.'s First Am. Compl. 21:8-10.)  Accordingly, the Court will recommend

27 dismissal of this claim.

28 / / /

### G.    Plaintiffs' Wrongful Death Claim

Defendants argue that Plaintiffs lack standing to bring a wrongful death claim.  However, standing to raise a wrongful death claim is governed by California Civil Code § 377.60, which states that:

> A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf:
> (a)    The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession.

As discussed above, the First Amended Complaint erroneously allege that Norma has standing to assert claims on behalf of the estate as a personal representative, when in fact Norma's standing to assert such claims should be premised on her status as Stephen's successor in interest.  See discussion, supra, Part III.A.  The Court will grant Plaintiffs' leave to amend

### H.    Plaintiffs' Claim for Negligent Infliction of Emotional Distress

Defendants argue that Plaintiffs fail to state a cognizable claim for negligent infliction of emotional distress.  Negligent infliction of emotion distress is one form of the tort of negligence, with the same elements of duty, breach of duty, causation, and damages.  Burgess v. Superior Court, 2 Cal. 4th 1064, 1072 (1992).

Defendants cite Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 984 (1993) for the proposition that "there is no duty to avoid negligently causing emotional distress to another."  This proposition has no applicability here.  In this case, Johnny asserts a negligence cause of action for emotional distress Defendants allegedly caused to Johnny, not to "another."  In other words, Johnny alleges that Defendants breached a duty they owed to Johnny, thereby causing emotional distress to Johnny.

California law recognizes negligence claims on a "bystander" theory of liability:

> The "bystander" cases ... address "question of duty in circumstances in which a plaintiff seeks to recover damages as a percipient witness to the injury of another." [Citation.] These cases "all arise in the context of physical injury or emotional distress caused by the negligent conduct of a defendant *with whom*

1
2
3

> *the plaintiff had no preexisting relationship, and to whom the*
> *defendant had not previously assumed a duty of care beyond that*
> *owed to the public in general.*" [Citation.] In other words,
> bystander liability is premised upon a defendant's violation of a
> duty not to negligently cause emotional distress to people who
> observe conduct which causes harm to another.

4
5

Id. at 1072-73 (italics in original).

6
7
8
9
10
11

"'In the absence of physical injury or impact to the plaintiff himself, damages for emotional distress should be recoverable only if the plaintiff: (1) is closely related to the injury victim, (2) is present at the scene of the injury-producing event at the time it occurs and is aware that it is causing injury to the victim and, (3) as a result suffers emotional distress beyond that which would be anticipated in a disinterested witness.'" Burgess v. Superior Court, 2 Cal. 4th 1064, 1073 (1992) (quoting Thing v. La Chusa, 48 Cal. 3d 644, 647 (1989)).

12
13
14
15
16
17
18
19
20

Defendants' argument that no breach of duty occurred fails because the First Amended Complaint alleges that Defendants' breached their duty not to negligently cause emotional distress to people who observe conduct which causes harm to another. Plaintiffs alleged a close relationship between Johnny and Stephen, as they were brothers. Johnny was present at the scene when Stephen was shot. Moreover, the First Amended Complaint alleges facts that support the conclusion that Johnny suffered emotional distress beyond that which would be anticipated in a disinterested witness, based upon the relationship between Johnny and Stephen as well as the fact that it was Johnny who made the 911 call that summoned the officers who shot and killed his brother.

21
22
23
24
25
26
27
28

Defendants argue that the First Amended Complaint is inconsistent as to whether Johnny observed Stephen being shot. The Court finds no inconsistency in the allegations. Plaintiffs alleged that Johnny was placed in a police cruiser parked on the road in front of the house. (First Am. Compl. ¶ 24.) From there, Johnny could see the front of the house as well as the front room via the front door. (First Am. Compl. ¶ 24.) Johnny witnessed Defendant Barsteceanu kick in the front door, go inside, then heard Stephen being shot. (First Am. Compl. ¶ 24.) Johnny then witnessed Deputy Jackson enter the house with his "less than lethal shotgun," point it at Stephen, and then fire it at least two times. (First Am. Compl. ¶ 24.)

1    The fact that Johnny may not have seen Stephen being shot is not fatal to his negligence

2    claim:

> 3    The second Thing requirement—the plaintiff was a percipient
>      witness to the traumatic incident and was contemporaneously
> 4    aware the event was causing injury to the victim—does not require
>      visual perception of an impact on the victim.  "A plaintiff may
> 5    recover based on an event perceived by other senses so long as the
>      event is contemporaneously understood as causing injury to a close
> 6    relative."

7    Ra v. Superior Court, 154 Cal. App. 4th 142, 148-49 (2007) (quoting Bird v. Saenz, 28 Cal. 4th

8    910, 916-17 (2002); Krouse v. Graham, 19 Cal. 3d 59, 76 (1977)).

9        The Court finds that Plaintiffs' alleges sufficient facts to support the claim for negligence

10   infliction of emotional distress on a bystander theory of liability.  Based upon the facts alleged,

11   Johnny may not have visually perceived the impact of Stephen being shot, but based upon what

12   he saw and heard, the facts plausibly support the conclusion that Johnny heard the shots and

13   would have been reasonably certain that the shots fired caused harm to Johnny.  Accordingly, the

14   Court finds that Plaintiffs state a cognizable claim for negligent infliction of emotional distress.

15   **I.      Plaintiffs' Bane Act Claims**

16       Defendants argue that Plaintiffs fail to state any cognizable claims under the Bane Act,

17   California Civil Code § 52.1.  The Bane Act prohibits any person from interfering "by threats,

18   intimidation, or coercion ... with the exercise or enjoyment by any individual ... of rights secured

19   by the Constitution or laws of the United States."  Cal. Civ. Code § 52.1.  "The essence of a

20   Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation

21   or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to

22   do under the law or to force the plaintiff to do something that he or she was not required to do

23   under the law."  Austin B. v. Escondido Union School Dist., 149 Cal. App. 4th 860, 883 (2007)

24   (citing Jones v. Kmart Corp., 17 Cal. 4th 329, 334 (1998)).

25       1.      Plaintiffs' Standing

26       Defendants contend that Norma and Johnny lack standing to bring a claim under the Bane

27   Act on behalf of themselves because the Bane Act provides a personal cause of action for victims

28   of a hate crime and does not provide derivative liability for the parents of a victim of a hate

1 crime. See Bay Area Rapid Transit Dist. v. Superior Court, 38 Cal. App. 4th 141, 144 (1995).

2    Defendants cite Abston v. City Merced, No. 09-cv-00511-OWW-GSA, 2009 WL

3 3398809 (E.D. Cal. Feb. 1, 2013) and Medrano v. Kern County Sheriff's Officer, 921 F. Supp.

4 2d 1009, 1016 (E.D. Cal. 2013) in support of their contention that Bane Act claims are lost upon

5 the death of the victim/plaintiff.  Abston is not persuasive, as it, and the cases cited therein, rely

6 upon a misreading of Bay Area Rapid Transit Dist. v. Superior Court, 38 Cal. App. 4th 141, 144

7 (1995).  The court in Bay Area Rapid Transit Dist. made no analysis on whether Bane Act claims

8 of a decedent survive the death of the decedent pursuant to California Code of Civil Procedure §

9 377.20 and pass to the decedent's successor in interest pursuant to California Code of Civil

10 Procedure § 377.30.  Tellingly, the concepts of the survival of a cause of action is not discussed

11 anywhere in the Bay Area Rapid Transit Dist. opinion nor does the case ever cite California

12 Code of Civil Procedure §§ 377.20 or 377.30.  Accordingly, the holding in Bay Area Rapid

13 Transit Dist. appears to be limited to whether a parent may state their own personal claim under

14 the Bane Act on the theory that the death of their child interfered with the parents' constitutional

15 right to parent.  See Bay Area Rapid Transit Dist., 38 Cal. App. 4th at 144 ("In support of their

16 fourth cause of action the Halls argue that Crabtrees coercive conduct, which resulted in their

17 son's death, has interfered with their constitutional right to parent.") (emphasis added).

18    In this case, Norma presents an entirely different theory.  Norma does not contend that

19 Stephen's death constitutes an interference with Norma's constitutional right to parent in

20 violation of the Bane Act.  Norma instead argues that Stephen held a claim under the Bane Act

21 for the interference with Stephen's constitutional right to be free from unconstitutional searches

22 and seizures.  Upon Stephen's death, that claim survived Stephen's death pursuant to California

23 Code of Civil Procedure § 377.20 and passed to Norma pursuant to California Code of Civil

24 Procedure § 377.30.

25    The other case relied upon by Defendants actually supports Plaintiffs' position:

26        However, as pleaded, Plaintiffs' Bane Act claim is in the nature of
         a survival cause of action, rather than a wrongful death cause of
27        action.  Unlike wrongful death, a survival claim is not a new cause
         of action that vests in heirs on the death of the decedent, but rather
28        is a separate and distinct cause of action which belonged to the

> decedent before death but, by statute, survives that event; the survival statutes do not create a cause of action, but merely prevent abatement of a cause of the injured person and provide for its enforcement by or against the personal representative of the deceased. [Citations.]

Medrano v. Kern County Sheriff's Officer, 921 F. Supp. 2d 1009, 1016 (E.D. Cal. 2013).  Citing Dela Torre v. City of Salinas, No. C-09-00626 RMW, 2010 WL 3743762, at *6 (N.D. Cal. Sept. 17, 2010), another federal case that held that Bane Act claims survive the death of the victim/plaintiff and may be commenced by a successor in interest, the court concluded that a plaintiff may bring a survival cause of action under the Bane Act on behalf of a decedent. Medrano, 921 F. Supp. 2d at 1016.

The Court finds the reasoning of Medrano to be persuasive.  None of the other cases cited by Defendants fully considered whether Bane Act claims survive the decedent and pass to a successor in interest.  Moreover, Defendants' arguments otherwise are not persuasive.

Defendants argue that Bane Act claims do not survive the decedent for three reasons. First, because the Bane Act specifically states that Bane Act claims may be brought by and individual "in his or her own name and on his or her own behalf."  Cal. Civ. Code § 52.1(b). Second, because the Bane Act states:

> (g) An action brought pursuant to this section is independent of any other action, remedy, or procedure that may be available to an aggrieved individual under any other provision of law, including, but not limited to, an action, remedy, or procedure brought pursuant to Section 51.7.

Cal. Civ. Code § 52.1(g).  Third, because "...section 52.1 is devoid of any mention of Code of Civil Procedure § 377.20 or the term's [sic] survival action, decadent, decedent's estate, heirs or personal representative."  (Def.'s P. & A. in Supp. of Mot. to Dismiss 20:26-27.)

Defendants' arguments are unpersuasive in light of the statutory language governing the survival of claims under California law.  California Code of Civil Procedure § 377.20(a) states that "[e]xcept as otherwise provided by statute, a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period." Accordingly, California law provides that survival of claims is the rule, not the exception. Defendants presume the opposite and attempt to argue that Section 377.20 does not apply unless

1  the Bane Act specifically provides for survival of a claim, which runs contrary to the plain

2  language of Section 377.20. Moreover, the Court does not interpret subdivisions (b) or (g) of the

3  Bane Act as negating the effect of Section 377.20. Subdivision (b) merely states a person may

4  bring a private cause of action under the Bane Act while subdivision (g) merely states that relief

5  under the Bane Act is in addition to, as opposed to as a substitute for, relief under other causes of

6  action. Cal. Civ. Code § 52.1(b), (g).

7       Based upon the foregoing, the Court finds that a cause of action under the Bane Act

8  survives the death of the victim/plaintiff pursuant to California Code of Civil Procedure § 377.20

9  and passes to the victim's/plaintiff's successor in interest pursuant to California Code of Civil

10  Procedure § 377.30. Accordingly, Norma alleges sufficient facts establishing her standing to

11  assert a Bane Act claim on behalf of the Estate of Stephen Crawley.

12              2.    Substantive Merits of Plaintiffs' Bane Act Claim

13       Defendants also argue that Plaintiffs' fail to allege sufficient facts to support a cognizable

14  Bane Act claim. Defendants argue that McRae did not commit any violent acts or threaten to

15  commit any violent acts against Stephen and that McRae did not interfere with or attempt to

16  interfere with Stephen's constitutional rights. Defendants also argue that Barsteceanu's alleged

17  use of excessive force was not done to interfere with a separate state or federal constitutional

18  right.

19       The elements of a claim under the Bane Act are: 1) the defendant interfered with or

20  attempted to interfere with the plaintiff's constitutional or statutory right by threatening or

21  committing violent acts, 2) that the plaintiff reasonably believed that if he exercised his

22  constitutional right the defendant would commit violence against him or his property or that the

23  defendant injured plaintiff or his property to prevent him from exercising his constitutional right

24  or to retaliate against the plaintiff for having exercised his constitutional right, 3) that the

25  plaintiff was harmed, and 4) that the defendant's conduct was a substantial factor in causing the

26  plaintiff's harm. Austin B. v. Escondido Union School Dist., 149 Cal. App. 4th 860, 882 (2007).

27       Plaintiffs contend that the constitutional right at issue with respect to their Bane Act

28  claim is Stephen's constitutional right to be free from unreasonable searches and seizures.

1    Defendants contend that a Bane Act claim cannot be premised only on the violation of Stephen's

2    right to be free from unconstitutional searches and seizures.  Defendants contend that there must

3    be some interference with a separate, affirmative right enjoyed by Stephen.  In other words, the

4    allegedly unconstitutional search or seizure must have interfered with some other constitutional

5    right other than the right to be free from unconstitutional searches and seizures.

6           Courts have given varying treatment to Defendants' arguments.  In Shoyoye v. County of

7    Los Angeles, 203 Cal. App. 4th 947, 959 (2012), the court held "that where coercion is inherent

8    in the constitutional violation alleged ... the statutory requirement of 'threats, intimidation, or

9    coercion' is not met.  The statute requires a showing of coercion independent from the coercion

10   inherent in the wrongful detention itself."  In Shoyoye, the plaintiff attempted to assert a Bane

11   Act claim based upon the violation of her right to be free from unreasonable seizures.  Shoyoye

12   had been incarcerated and ordered released, but the jail incorrectly processed Shoyoye's

13   paperwork and he was held in jail about 16 days after he had been ordered released.  Id. at 844.

14   The court rejected Shoyoye's Bane Act claims, reasoning that any intimidation or coercion that

15   occurred was "reasonable and incident to maintaining a jail" and "not carried out in order to

16   effect a knowing interference with Shoyoye's constitutional rights.  Id. at 961.  Other courts have

17   held that, where the coercion itself is a violation of the plaintiff's rights, a Bane Act claim will

18   not lie unless that coercion results in the interference with some separate constitutional or

19   statutory right.  See, e.g., Rodriguez v. City of Fresno, 819 F. Supp. 2d 937, 954 (E.D. Cal.

20   2011).

21          However, other decisions have treated intent as the touchstone inquiry with respect to

22   Bane Act claims: "[T]he relevant distinction for purposes of the Bane Act is between intentional

23   and unintentional conduct..."  Rodriguez v. City of Modesto, No. 1:10-cv-01370-LJO-MJS, 2013

24   WL 6415620, at *11 (E.D. Cal. Dec. 9, 2013).  "[W]here Fourth Amendment unreasonable

25   seizure or excessive force claims are raised and intentional conduct is at issue, there is no need

26   for a plaintiff to allege a showing of coercion independent from the coercion inherent in the

27   seizure or use of force."  Id. at *12.

28   / / /

1   The Court finds the reasoning of <u>Rodriguez v. City of Modesto</u> to be more persuasive.  In

2   this case, reading the allegations in the light most favorable to Plaintiffs, Plaintiffs claim that

3   Defendants sought entry into the home, but Stephen refused--which Plaintiffs allege was a valid

4   exercise of Stephen's right to be free from unreasonable searches and seizures.  Plaintiffs further

5   contend that Defendants violated Stephen's right to be free from unreasonable searches and

6   seizures by forcibly entering the home and then violated Stephen's right to be free from

7   excessive force by shooting Stephen.[1]

8   Several theories of Bane Act liability can be read into these allegations.  First, the act of

9   forcibly entering the home could be construed as an act of intimidation and coercion to dissuade

10   Stephen from exercising his right to refuse consent to an unreasonable search or seizure.  In other

11   words, taking the facts in the light most favorable to Plaintiffs, Defendants intimidated Stephen

12   by forcibly entering the home, notwithstanding Stephen's lack of consent, thereby dissuading

13   Stephen from withholding such consent in the future even though he had the constitutional right

14   to do so.

15   Second, the act of shooting Stephen and using excessive force against Stephen could

16   similarly be construed as an act of intimidation and coercion to dissuade Stephen from exercising

17   his right to refuse consent to a search in the future.  In other words, Defendants allegedly shot

18   Stephen in retaliation for withholding consent to enter the home and to send a message that

19   Stephen should not withhold consent and should answer the door when Defendants knock in the

20   future.[2]

21   Both theories fall squarely within the type of conduct that the Bane Act was intended to

22   prevent: forcing Stephen to do something that he or she was not required to do under the law.

23

24   [1] At the hearing, Defendants argued that Plaintiffs did not assert a Section 1983 claim based upon the unlawfulness
of the search apart from the claim for the use of excessive force.  However, the validity of Plaintiffs' Bane Act claim

25   is not dependent upon whether Plaintiffs chose to assert a separate claim based upon the unlawful search.  Plaintiffs'
claim alleges that an unlawful search occurred, (<u>see, e.g.</u>, First Am. Compl. ¶ 75 ("...interfered with or attempted to

26   interfere with the rights of Stephen to be free from unreasonable searches..."), which is sufficient to support the
Bane Act claim.

27   [2] The Court stresses that the facts revealed during the course of discovery may or may not show that this was the
case.  However, at this stage in litigation, the facts must be viewed in the light most favorable to Plaintiff.  <u>Clegg</u>, 18

28   F.3d at 754.

See Austin B., 149 Cal. App. 4th at 883 (citing Jones v. Kmart Corp., 17 Cal. 4th 329, 334 (1998)).  Moreover, these theories are distinguishable from Shoyoye, where it was clear that jail officials were not detaining Shoyoye with the intent to dissuade Shoyoye from exercising his right to not be jailed without cause.  In Shoyoye, it was clear that the defendants were negligent and simply made a mistake, as opposed to deliberately using coercion and intimidation to dissuade Shoyoye from doing something that he was not required to do under the law.

Based upon the foregoing, the Court finds that the First Amended Complaint states a cognizable claim under the Bane Act.

### J.    Plaintiffs' Claims Against Defendants Robinson, McRae and Barsteceanu in their Official Capacities

Defendants argue that Plaintiffs' claims against Defendants Robinson, McRae and Barsteceanu should be dismissed because they are redundant with Plaintiffs' claims against Defendant County of Kings.  Plaintiffs concede that the claim against Defendant Robinson is redundant because no claims are asserted against Robinson in his individual capacity. Accordingly, Plaintiffs consent to the dismissal of Robinson.

With respect to the claims against McRae and Barsteceanu, since Plaintiffs state claims against them in their individual capacity, it would be improper to dismiss these defendants. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985).  "There is no longer a need to bring official-capacity actions against local government officials, for under Monell ... local government units can be sued directly for damages and injunctive or declaratory relief."  Id. at 167 n.14. "When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dept., 533 F.3d 780, 799 (9th Cir. 2008).

The language used by the Ninth Circuit in Center for Bio-Ethical Reform, Inc. suggests that dismissal is only proper when both the municipal officer and local government entity are named and the officer is named only in his or her official capacity.  Defendant argues that the

same rationale applies to dismiss the official capacity claims against an officer even when the same officer is also sued in his or her personal capacity. Defendants' argument does, however, have some support in district court cases where it appears that official capacity claims were carved out and dismissed even when personal capacity claims against the same officer remained. See, e.g., Aguirre v. County of Sacramento, No. 2:12-cv-2165 TLN KJN P, 2014 WL 996271, at *3 (E.D. Cal. Mar. 13, 2014).

Since the Monell claim against the County of Kings is equivalent to the official capacity claims against McRae and Barsteceanu, neither Plaintiff nor Defendant suffers any appreciable prejudice regardless of whether the official capacity claims proceed or whether they are dismissed. Moreover, McRae and Barsteceanu will remain in this action due to the personal capacity claims alleged against them. While this Court is diverging from the strict adherence found in Center for Bio-Ethical Reform, Inc., by which a court "may" dismiss as redundant, "[w]hen both a municipal officer and a local government entity are named, and the officer is named only in an official capacity" the Court believes the rationale by which redundancy was determined there is equally applicable here. Moreover, dismissal of the official capacity claims against McRae and Barsteceanu would beneficially avoid potential confusion with the jury, who may have difficulty understanding the distinction between individual capacity and official capacity suits. Accordingly, the Court finds that dismissal of the official capacity claims against Defendants McRae and Barsteceanu is appropriate based upon the fact that the county entity is a party to this lawsuit.

## IV.

### CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the Court finds that the claims brought on behalf of the Estate of Stephen Crawley should be dismissed due to Plaintiffs' admitted defects regarding the allegations establishing their standing to bring such claims. However, leave to amend should be granted to allow Plaintiffs' to cure these technical defects in their claims. The Court further finds that Plaintiffs' state law battery claim against Defendant McRae should be dismissed. Finally, the Court finds that Plaintiffs' claims against Defendant Robinson and Plaintiffs' official

capacity claims against Defendants McRae and Barsteceanu should be dismissed because those claims are redundant with the claims against the County of Kings.  The Court finds that Defendants' motion to dismiss should be denied in all other respects.

Accordingly, it is HEREBY RECOMMENDED that:

1.      Defendants' motion to dismiss be PARTIALLY GRANTED;

      a.      Plaintiffs' claims brought on behalf of the Estate of Stephen Crawley be DISMISSED with leave to amend;

      b.      Plaintiffs' battery claim against Defendant McRae be DISMISSED;

      c.      Plaintiffs' claims against Defendant Robinson be DISMISSED;

      d.      Plaintiffs' official capacity claims against Defendants McRae and Barsteceanu be DISMISSED;

      e.      Defendants' motion to dismiss be DENIED in all other respects; and

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen (14) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 23, 2014**

_____
UNITED STATES MAGISTRATE JUDGE